PEOPLE v DOYAN

Docket No. 55604. Submitted March 2, 1982, at Grand Rapids.—
    Decided May 20, 1982.

John Doyan was charged with breaking and entering with intent
    to commit larceny and, in a separate count, with larceny over
    $100. He was acquitted of the breaking and entering charge
    and was convicted of larceny in a building, a lesser offense
    under the second count, Kalamazoo Circuit Court, Donald T.
    Anderson, J. Defendant appeals, alleging that the trial court
    erred in denying the defendant's motion for a directed verdict
    of acquittal on the breaking and entering charge, that the court
    erred in ruling that certain persons were not res gestae wit-
    nesses, and that the prosecutor erroneously invited the jury to
    compare the defendant's handwriting with that on other trial
    exhibits. *Held;*

    1. The evidence was not sufficient to support a finding of
    minimal force to gain entry or of unauthorized entry. There-
    fore, the denial of the motion for a directed verdict on the
    breaking and entering charge was error. Reversal is not re-
    quired, however, because the defendant was acquitted of the
    breaking and entering and of all lesser offenses, negating the
    likelihood of a compromise verdict on that charge. Further-
    more, the evidence clearly supported conviction under the
    second count. The defendant was not prejudiced by the error.

    2. Of the three persons claimed to be res gestae witnesses,
    two can be fairly characterized as res gestae witnesses. How-
    ever, in light of the evidence and of the defendant's theory of
    the case, the testimony of those witnesses could not have
    convinced even one juror to vote for acquittal on the larceny
    charge. The defendant was not prejudiced by the failure to
    produce the witness.

    3. The prosecutor's argument was a fair comment on the
    evidence.

    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 75 Am Jur 2d, Trial §§ 483, 552, 553.
[2] 75 Am Jur 2d, Trial §§ 467, 708.
[3] 29 Am Jur 2d, Evidence §§ 723, 724.
[4] [No reference]
[5] 29 Am Jur 2d, Evidence § 180.

Cynar, J., concurred in the affirmance of the conviction. He would, however, find the evidence sufficient to support a charge of breaking and entering. Also, he would not characterize the unproduced witnesses as res gestae witnesses. However, even assuming the trial court erred as found by the majority, he would agree that the error was harmless.

1. Criminal Law — Directed Verdict.

A trial court, in ruling on a criminal defendant's motion for a directed verdict of acquittal, must view the evidence in a light most favorable to the prosecution and determine whether the jury could reasonably find that the essential elements of the offense charged have been proven beyond a reasonable doubt; if so, the motion should be denied.

2. Criminal Law — Directed Verdict.

It is error for a trial judge to refuse to direct a verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged; however, the erroneous denial of a directed verdict on a principal charge does not require reversal where the jury was instructed upon and acquitted the defendant of all possible offenses under the principal charge and where the evidence clearly supported the defendant's conviction under a second count.

3. Witnesses — Res Gestae Witnesses.

A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense; actual presence at the time of a crime is not necessary to qualify one as a res gestae witness.

4. Witnesses — Appeal.

The decision of a trial court as to the status of a missing witness will not be overturned unless clearly erroneous.

5. Witnesses — Res Gestae Witnesses — Presumption of Prejudice.

The presumption of prejudice to a defendant by reason of the nonproduction of a res gestae witness is not conclusive; the failure to produce a res gestae witness was harmless error where, in light of the evidence and the theory of the defense, the testimony of the witness could not possibly have convinced even one juror to vote for acquittal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Wesley L. McPeek,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich,* for defendant on appeal.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

D. F. WALSH, P.J. Defendant, John Doyan, was charged with breaking and entering with intent to commit larceny (Count I), MCL 750.110; MSA 28.305, and larceny over $100 (Count II), MCL 750.356; MSA 28.588. He was acquitted of Count I and convicted of the lesser offense of larceny in a building under Count II, MCL 750.360; MSA 28.592. He was sentenced to a prison term of 32 months to 4 years.

The charges arose out of a January 11, 1980, incident at the home which defendant shared with Marlon Reese and April Doty. Defendant rented a room in the basement of the house. The ground floor and second floor were shared by Reese and Doty. There was an inner door which separated the stairs going down to the basement from the ground floor kitchen. This door could only be locked or unlocked from inside (*i.e.,* from the kitchen). Defendant was charged with breaking that door and entering the main part of the house with intent to commit larceny therein. He was also accused of stealing money, a watch, a camera and a check from the bedroom shared by Reese and Doty.

At the close of proofs, defense counsel moved for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a directed verdict on the breaking and entering charge. He argued that there was insufficient evidence of a breaking to warrant submission of that charge to the jury. The court denied the motion, ruling that there was evidence from which the jurors could reasonably find that the inner door had at least been closed.

In ruling on defendant's motion for a directed verdict, the trial court was bound to view the evidence in a light most favorable to the prosecution and determine whether the jury could reasonably find that the essential elements of breaking and entering had been proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), *cert den* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980), *People v Harris,* 110 Mich App 636; 313 NW2d 354 (1981). After careful review of the record, we are persuaded that the trial court's ruling was erroneous.

Mr. Reese testified that he had locked the inner door after defendant went to the basement on the evening of January 10. His testimony concerning whether that door was open or closed on the morning of January 11 was contradictory, but his final statement was that he was not sure if the inner door had been open or closed when he left the house on January 11. Defendant testified that Reese had opened the door for him on the morning of January 11. It was undisputed that the inner door, which could be unlocked only from the inside, showed no signs of forceful entry. This evidence was inconsistent with a theory that defendant forcefully entered the main part of the house through the locked inner door. Moreover, the only testimony which would have reasonably supported a theory that the door had been unlocked but closed was defendant's testimony that Reese had

opened the door when defendant asked him to do so.

The evidence was not sufficient to support a finding of either minimal force to gain entry or unauthorized entry. *People v Rider,* 411 Mich 496; 307 NW2d 690 (1981). The trial court, therefore, erred in denying defendant's motion for a directed verdict.

We are not persuaded, however, that this error was reversible. Defendant's reliance on *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), is, in our judgment, misplaced. In *Vail,* the defendant was charged with first-degree murder and was convicted of voluntary manslaughter. The Supreme Court reversed because the evidence had been insufficient to warrant submission of the first-degree murder charge to the jury. The defendant's acquittal of the higher offense did not vitiate the reversible nature of the error:

"Perhaps the best explanation for the logic of this rule is found in *People v Gessinger,* 238 Mich 625, 628; 214 NW 184 (1927), where Justice BIRD, writing for the majority, stated:

" 'I think it is evident to most practitioners of experience that it would be much easier to secure an acquittal if the defendant were only charged with the lesser offense than it would be were he charged with all three offenses. The tendency of jurors is to compromise their differences. Where there is only one charge they are obliged to meet the question squarely by yes or no, or disagree, but where the charges are three, the juror who thinks there should be no conviction, and the juror who thinks that a conviction should be had of the greater offense are quite liable to agree upon a conviction of the lesser offense.'

"Thus, where a jury is permitted consideration of a charge unwarranted by the proofs there is always prejudice because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility

of a compromise verdict. For this reason it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged." *Id.*, 463-464.

The concern in *Vail* was quite clearly the prejudice to the defendant due to the possibility that the jury invalidly compromised their verdict. See also *People v Wells,* 87 Mich App 402, 411; 274 NW2d 797 (1978).

In this case, however, the case went to the jury for consideration of two separate counts. In connection with Count I, the jury was instructed to choose from among the following verdicts: guilty of breaking and entering with intent to commit larceny, attempted breaking and entering with intent to commit larceny, entering without breaking with intent to commit larceny, attempted entering without breaking with intent to commit larceny, or not guilty. Under Count II, the jurors were given the following verdicts from which to choose: guilty of larceny over $100, attempted larceny over $100, larceny in a building, attempted larceny in a building, larceny under $100, attempted larceny under $100, or not guilty. The jurors found defendant not guilty on Count I and guilty of larceny in a building on Count II.

Because defendant was acquitted of the principal charge and all lesser offenses under Count I, the likelihood of a compromise verdict by virtue of improper submission to the jury of that principal charge is, in our view, nonexistent. The instructions adequately informed the jurors that the two counts were separate and that they were to reach separate verdicts as to each count. The record does not suggest that the fact that defendant faced conviction on an insufficiently supported charge

influenced the jurors to surrender their settled, conscientious opinions as to defendant's guilt of the separate charge set forth in Count II. *People v Vail, supra,* and its progeny have involved likely compromise verdicts of guilty of lesser included offenses. Defendant, however, was not convicted of a lesser included offense of the breaking and entering charge. We decline to hold that simply facing multiple charges, albeit one of those charges is unsupported by sufficient evidence, makes compromise of jury verdicts more likely. There is no suggestion in this case that evidence admissible under the breaking and entering charge was inadmissible under the larceny charge. *Cf. People v Tillman,* 85 Mich App 425, 429-430; 271 NW2d 261 (1978), *rev'd on other grounds* 406 Mich 898 (1979). Because defendant was acquitted of all possible offenses under Count I and because the evidence clearly supported conviction under Count II, we find that defendant was not prejudiced by the trial court's erroneous denial of his motion for a directed verdict on the breaking and entering charge.

Defendant also claims that the trial court reversibly erred in ruling that Douglas Tyler, Joseph Bloomquist and Dan Israels were not res gestae witnesses.

A res gestae witness is one who was an eyewitness to some event in the continuum of the criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense. *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976). Presence at the time of the crime is not necessary to qualify one as a res gestae witness. *People v Howell,* 396 Mich 16, 25, fn 11; 238 NW2d 148 (1976). The decision of the trial court as

to the status of a missing witness will not be overturned unless clearly erroneous. *People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976). Every reasonable doubt should be resolved in favor of endorsing and producing a person as a res gestae witness when a defendant insists on his rights. *Id.*

We find no clear error in the court's ruling that Mr. Tyler was not a res gestae witness. Mr. Tyler was the employer of Mr. Reese and, according to Reese's testimony, had given Reese a $1,000 commission check. It was the proceeds from this check that Reese placed in a coat pocket in his bedroom. Defendant was charged with stealing this money. Mr. Tyler's connection to the January 11 incident was extremely remote. We fail to see how he can in any way be characterized as one who witnessed any event in the continuum of the criminal transaction.

With respect to the two other witnesses, however, the trial court clearly erred. Upon her arrival at home on the evening of January 11, April Doty discovered that the inner door in the kitchen was open. She closed the door and then noticed a note lying on the table. The note, which she identified as being in defendant's handwriting, read, "Marlon, I'm sorry. I never took anything before. I'm leaving for a while. I will call you, but don't go to the cops." It was signed "Johnny". At that point, Joe Bloomquist called on the telephone and Doty asked him to come to the house. When he arrived, the two of them went through the house. Israels arrived 15 minutes later and all three went through the house. According to Doty, the bedroom had been ransacked. The closet doors were open and things were in disarray. Her watch, which had been on the dresser, was missing. The

money which Reese had placed in his coat pocket was gone.

We agree with defendant that, by virtue of their arrival shortly after Doty's arrival and their inspection of the house with her, Bloomquist and Israels can be fairly characterized as res gestae witnesses. However, the presumption of prejudice to a defendant by reason of nonproduction of a res gestae witness is not conclusive. *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979), *People v Donald,* 103 Mich App 613, 616; 303 NW2d 247 (1981).

The record in this case refutes the assertion of prejudice to defendant. To the extent that these missing witnesses could have shed light on the breaking and entering charge, their absence was, of course, rendered harmless by defendant's acquittal of Count I. As for Count II, the witnesses possibly could have testified about the note found by Doty and about the condition of the bedroom from which several items were allegedly stolen. Defendant, however, admitted writing the note and leaving it on the table. There was, therefore, no dispute as to the existence or authenticity of the note, only as to defendant's intended meaning in the written message. Defendant testified that the note referred to other money belonging to Reese which defendant had taken and that he took nothing from the house. With respect to the condition of the bedroom, defendant never denied that it had been ransacked or that the money, watch and other items were missing. It was defendant's theory that Reese had staged the theft. If Reese had done so, however, it would have been before the two missing witnesses arrived at the house. Reese was not home when Doty arrived. He arrived one-half hour later, after Bloomquist and Israels had inspected the house with Doty.

We conclude that the error in failing to produce these two res gestae witnesses was harmless. In light of the evidence and the theory of the defense, the testimony of these witnesses could not possibly have convinced even one juror to vote for acquittal on Count II. *People v Gillam,* 93 Mich App 548; 286 NW2d 890 (1979).

Defendant's final argument on appeal concerns the prosecutor's closing argument. The prosecutor invited the jury to compare defendant's handwriting with handwriting on other trial exhibits. This was fair comment on the evidence. *People v Drew,* 83 Mich App 57; 268 NW2d 284 (1978), *People v Hernandez,* 80 Mich App 465; 264 NW2d 343 (1978).

Affirmed.

W. F. HOOD, J., concurred.

CYNAR, J. *(concurring).* I agree that defendant's conviction should be affirmed. I would base such a result on reasons other than those expressed by the majority.

First, I would find that there was sufficient evidence to support the charge of breaking and entering. While it is true that the testimony of Mr. Reese is equivocal, I think it sufficient to support a finding that the kitchen door was locked on the day in question. If it is not, I would find the error harmless as does the majority.

Second, I disagree with the majority's determination that Bloomquist and Israels should be considered res gestae witnesses. I do not believe that the arrival of the two at the scene shortly after the crime was discovered is sufficient to support that finding. While it is true that they witnessed the aftermath of the crime, I do not think that

they were witnesses to any part of or continuation of the criminal transaction. The crime was complete before witness Doty arrived at the scene, and the subsequent arrival of Bloomquist and Israels does not make them res gestae witnesses. If they were, I would still find, as does the majority, that any error committed by the trial court was harmless.